IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| R. MICHELLE LEWIS, On Behalf of Herself and all Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO.  3:16-cv-136 |
| PREFERRED IMAGING CENTERS, LLC, TOGGLE, LLC, and LISA BAIRD, | § § § | COLLECTIVE ACTION |
| Defendants | § § | |

## PLAINTIFF'S COMPLAINT FOR DAMAGES

Plaintiff, R. Michelle Lewis ("Plaintiff"), files this Complaint against Preferred Imaging Centers, LLC ("Preferred Imaging"), Toggle, LLC ("Toggle"), and Lisa Baird ("Baird") (collectively "Defendants"), showing in support as follows:

## I.    SUMMARY

1.    Plaintiff worked for Defendants from approximately July 2010 to February 2015 as a medical transcriptionist. She performed medical transcription work for Preferred Imaging under the direction/control of Baird, but was paid by Toggle as a so-called independent contractor. Preferred Imaging and Baird are both listed as members of the Toggle corporate entity pursuant to public records on file with the Texas Secretary of State.

2.    Plaintiff regularly worked in excess of 40 hours per seven day workweek for Defendants, but was not paid time and one-half her regular rate of pay for any hour worked over 40 in any workweek while working for Defendants. In addition to Plaintiff, Defendants utilized many other medical transcriptionists who, like Plaintiff, were misclassified as independent contractors, worked in excess of 40 hours per week for Defendants, but were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each and every

seven day workweek (the "putative collective action members"). As a result, Plaintiff and the putative collective action members did not enjoy and receive the benefits of employment, such as overtime wages, health insurance benefits, and retirement benefits.

3.      After the end of Plaintiff's work for Defendants, the Texas Workforce Commission determined that medical transcriptionists working for Preferred Imaging, but paid by Toggle, were misclassified independent contractors, and should have been classified as employees. Thereafter, sometime in 2015 after the end of Plaintiff's work for Defendants, Defendants converted medical transcriptionists from independent contractor to employee status.

4.      Plaintiff, on behalf of herself and all others similarly situated, seeks to recover unpaid overtime wages and all available damages under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "FLSA") for Defendants' failure to pay Plaintiff and the putative collective action members time and one-half their respective regular rates of pay for all hours worked over 40 during each seven day workweek for the time period of three years preceding the date this lawsuit was filed and forward.

5.      Plaintiff, on behalf of herself and all others similarly situated, alleges that Preferred Imaging, Toggle, and/or Baird are joint employers and are jointly and severally liable for their FLSA damages.

## II.      THE PARTIES, JURISDICTION, AND VENUE

### A.      PLAINTIFF R. MICHELLE LEWIS

6.      Plaintiff is a natural person who resides in Dallas, Texas. She has standing to file this lawsuit.

7.      Although Plaintiff was labeled as a so-called independent contractor by Preferred Imaging, Toggle, and/or Baird, the economic reality is that, at all times relevant, she was an "employee" of Preferred Imaging, Toggle, and/or Baird as that term is defined by the FLSA. 29 U.S.C. § 203 (e)(1). *See also, Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). Preferred Imaging, Toggle, and/or Baird were joint employers of Plaintiff.

### B.      FLSA COLLECTIVE ACTION MEMBERS

8.      The FLSA putative collective action members are all misclassified independent contractors similarly situated to Plaintiff who, in the relevant time period: (a) worked as medical record transcriptionists for Preferred Imaging and/or Baird, but were issued paychecks and 1099s from Toggle; (b) worked more than 40 hours in any workweek in the relevant time period; and (c) were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each such workweek by Preferred Imaging, Toggle, and/or Baird. Plaintiff reserves the right to modify the scope of the putative collective action members pursuant to an amended complaint and/or motion for conditional certification.

9.      All of the FLSA putative collective action members are similarly situated to Plaintiff, and to one another, within the meaning of Section 216(b) of the FLSA.

### C.      DEFENDANT PREFERRED IMAGING CENTERS, LLC

10.     Preferred Imaging is a limited liability company incorporated under the laws of the State of Texas.

11.     During all times relevant to this lawsuit, Preferred Imaging has done business in the State of Texas.

12.     Preferred Imaging's principal office and principal place of business is located at 5601 Granite Parkway, Suite 460, Plano, Texas 75024.

13.     Preferred Imaging's managing member is Preferred Medical Holdings, LLC.

14.     Preferred Imaging is one of three members of the Toggle limited liability company.

15.     During the time period relevant to the FLSA causes of action set forth in this lawsuit, Preferred Imaging is/was an "employer" of Plaintiff and the putative collective action members pursuant to the FLSA.

16.     At all times relevant to this lawsuit, Preferred Imaging is and has been an "enterprise engaged in commerce" pursuant to the FLSA.

17.     At all times relevant to this lawsuit, Preferred Imaging employed, and continues to employ, two or more employees who engaged in commerce. For example, Preferred Imaging has, at all relevant times, had two or more employees engaged in interstate medical transcription services and other medical services.

18.     At all times relevant to this lawsuit, Preferred employed two or more employees who regularly handled and/or worked on goods and/or materials in their daily work that were moved in and/or produced for commerce by other people. Examples of such goods and/or materials include computers, software, computer related equipment, communication devices, and office equipment and supplies used in connection with Preferred Imaging's business operations.

19.     On information and belief, at all times relevant to this lawsuit, Preferred Imaging has had annual gross sales or business volume in excess of $500,000.

20.     Preferred Imaging may be served with summons by serving its registered agent, Meyer & Colegrove, PLLC, 5700 Granite Parkway, Suite 470, Plano, Texas 75024.

### D.    __TOGGLE, LLC__

21.    Toggle is a limited liability company incorporated under the laws of the State of Texas.

22.    During all times relevant to this lawsuit, Toggle has done business in the State of Texas.

23.    Toggle's principal office and principal place of business is located at 5601 Granite Parkway, Suite 460, Plano, Texas 75024.

24.    The limited liability company members of Toggle are Preferred Imaging, Baird, and Preferred Medical Holdings, LLC.

25.    During the time period relevant to the FLSA cause of action set forth in this lawsuit, Toggle is/was an "employer" of Plaintiff and the putative collective action members pursuant to the FLSA.

26.    At all times relevant to this lawsuit, Toggle is and has been an "enterprise engaged in commerce" pursuant to the FLSA.

27.    At all times relevant to this lawsuit, Toggle employed, and continues to employ, two or more employees who engaged in commerce For example, Toggle has, at all relevant times, had two or more employees engaged in interstate medical transcription services and/or payment of workers providing medical transcription services.

28.    At all times relevant to this lawsuit, Toggle employed two or more employees who regularly handled and/or worked on goods and/or materials in their daily work that were moved in and/or produced for commerce by other people. Examples of such goods and/or materials include computers, software, computer related equipment, communication devices, and office equipment and supplies used in connection with Toggle's business operations.

29.     On information and belief, at all times relevant to this lawsuit, Toggle has had annual gross sales or business volume in excess of $500,000.

30.     Preferred Imaging may be served with summons by serving its registered agent, Meyer & Colegrove, PLLC, 5700 Granite Parkway, Suite 470, Plano, Texas 75024.

**E.      LISA BAIRD**

31.     Baird is a natural person, and a resident of the State of Texas.

32.     During the time period relevant to this lawsuit, Baird was an "employer" of Plaintiff and the putative collective action members pursuant to the FLSA.

33.     Baird had operational control over Preferred Imaging's and/or Toggle's compliance with the FLSA's overtime wage provisions. As a manager of Toggle, the entity which paid Plaintiff and the putative collective action members for their medical transcription work for Preferred Imaging, Baird made the policy and operational decisions which resulted in the FLSA violations complained of by Plaintiff in this lawsuit.

34.     Baird is/was active in the daily business operations of Toggle and/or Preferred Imaging and has/had responsibility for Toggle's and/or Preferred Imaging's compliance with the FLSA's overtime wage provisions with respect to Plaintiff and the putative collective action members.

35.     Baird had the power to hire and fire Plaintiff and the putative collective action members.

36.     Baird had supervisory authority over Plaintiff and the putative collective action members and established their  job duties and responsibilities.

37.     Baird set and/or controlled the work schedules of Plaintiff and the putative collective action members.

38.     Baird determined the  conditions of employment and/or terms of work of Plaintiff and the putative collective action members.

39.     Baird made payroll decisions as to Plaintiff and the putative collective action members, including determination of the methods, rates, and timing of compensation.

40.     Baird controlled and/or maintained records relating to work and compensation of Plaintiff and the putative collective action members.

41.     Baird may be served with summons at 1950 Fleming Drive, McKinney, Texas 75070.

F.      **JURISDICTION AND VENUE**

42.     The Court has personal jurisdiction over Defendants based on both general and specific jurisdiction.

43.     During all times relevant to this lawsuit, Defendants have done business in the State of Texas and continue to do business in the State of Texas.

44.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff bases her claims on federal law, namely the FLSA.

45.     Venue is proper in the United States District Court for the Northern District of Texas because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

46.     Venue is proper in the Dallas Division of the United States District Court for the Northern District of Texas because a substantial part of the events giving rise to Plaintiff's claims occurred in the Dallas Division.

### III.   <u>FACTUAL BACKGROUND</u>

47.     Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

48.     Preferred Imaging in a medical services company. In connection with its business operations, it utilizes medical transcriptionists to transcribe medical records. Those medical transcriptionists typically work from their homes. The medical transcriptionists are, however, paid through a company named Toggle, which is a company owed and/or managed, in part, by Preferred Imaging. Baird is also an owner/manager of Toggle, and controlled the work and managed the medical transcriptionists who performed work for Preferred Imaging, but were paid by Toggle.

49.     Plaintiff was one of those medical transcriptionists, and she performed her work for Defendants mostly at her home in Dallas, Dallas County, Texas.

50.     A recent investigation into Preferred Imaging and/or Toggle by the Texas Workforce Commission concluded that medical transcriptionists, such as Plaintiff, who were paid as so-called independent contractors, were instead actually employees under controlling law. After that determination, Defendants converted their medical transcriptionists to employees. That reclassification took place in 2015 after Plaintiff's work for Defendants ended.

51.     At all times prior to that reclassification, Plaintiff and the putative class members were paid as independent contractors by Defendants by being issued 1099s as opposed to W-2s for annual work, not being paid overtime wages for hours worked over 40 in a workweek, and having no deductions made from their paychecks pursuant to the Federal Insurance Contributions Act ("FICA").

52.     The work performed by Plaintiff and the putative class members benefited Preferred Imaging, Toggle and Baird at the same time.

53.     Although labeled and/or paid as independent contractors by Defendants, Plaintiff and the putative collective action members worked exclusively for Defendants for long periods of time, routinely more than one year. During the time period of approximately July 2010 to February 2015, Plaintiff worked exclusively for Preferred Imaging, but was paid by Toggle.

54.     Defendants set the weekly work schedule for Plaintiff and the putative collective action members, and Plaintiff and the putative collective action members were expected and required to work for Defendants full time.

55.     Plaintiff and the putative collective action members were supervised by Preferred Imaging and/or Toggle managers, namely Baird, on a weekly basis.

56.     Plaintiff and the putative collective action members were instructed in the manner in which to do their jobs by Defendants and were provided with the medical records to be transcribed by Preferred Imaging and Baird. For their work, Plaintiff and the putative collective action members were issued paychecks and 1099s by Toggle.

57.     Plaintiff and the putative collective action members were not permitted and did not hire employees to assist them with their work for Defendants.

58.     Plaintiff and the putative collective action members did not exercise sufficient, if any, control over a meaningful part of the business so as to be a separate economic entities from Preferred Imaging and/or Toggle. Instead, they were simply a part of Preferred Imaging's and/or Toggle's workforce performing job duties and work that were integral parts of Preferred Imaging's and/or Toggle's business operations. Plaintiff and the putative collective action

members were simply the workers Toggle paid relative to work performed by them for Preferred Imaging .

59.     Plaintiff and the putative collective action members provided no material investment in Preferred Imaging' and Toggle's respective business operations, and each such Defendant's investment in its business operations exceeds the investments, if any, of each Plaintiff and putative collective action member in connection with their work for Preferred Imaging and/or Toggle.

60.     Plaintiff worked exclusively for Defendants during the time period of July 2010 to February 2015. During that time period, Plaintiff was economically dependent on compensation from Toggle relative to work performed for Preferred Imaging that was controlled by Baird. Like Plaintiff, and on information and belief, the putative collective action members were economically dependent on pay from Toggle relative to work performed for Preferred Imaging that was controlled by Baird. Plaintiff makes this allegation based on her personal knowledge of the amount and type of work required of medical transcriptionists, like her, by Defendants in addition to personal knowledge of the working conditions of other medical transcriptionists of Defendants.

61.     The work demand from Defendants prevented Plaintiff and the putative collective action members from meaningful opportunity for earned income from a source other than Preferred Imaging through paychecks issued by Toggle.

62.     Plaintiff and the putative collective action members were typically paid based on the number of lines of medical transcriptions performed. The more lines transcribed, the more money they made. Plaintiff and the putative collective action members did not and could not hire employees of their own while working for Defendants. Similarly, Plaintiff and the putative

collective action members could not and did not subcontract the work assigned to them by Defendants. Plaintiff and the putative collective action members had no opportunity for loss. Instead, there was only opportunity for earned income based upon working more rapidly and performing more medical record transcriptions.

63.     All major components open to initiative, such as advertising, pricing, and business decisions, were controlled by Defendants as opposed to Plaintiff and the putative collective action members.

64.     Defendants did not make and keep a record of all of the data required by 29 C.F.R. § 516.2(a) in connection with the work performed by Plaintiff and the putative collective actions members for Preferred Imaging and/or Toggle.

65.     Defendants do not have an accurate record of the total hours worked by Plaintiff in each seven day workweek relative to her claims in this lawsuit.

66.     Defendants do not have an accurate records of the total hours worked respectively by each of the putative collective action members during each seven day workweek relative to the claims in this lawsuit.

67.     Plaintiff and the putative collective action members routinely worked in excess of 40 hours in a workweek for Defendants. When Plaintiff and the putative collective action members worked in excess of 40 hours in a workweek for Defendants, they were not paid corresponding overtime premium compensation in compliance with the FLSA.

### IV.     CONTROLLING LEGAL RULES

68.     "Employ" includes to suffer or permit work. 29 U.S.C. § 203(g).

69.     The FLSA generally requires that an employer employing an employee for a workweek exceeding 40 hours must compensate the employee for hours worked over 40 "at a

rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1). The "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e).

70.     Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216.

71.     Whether an individual is an employee, who is covered by the FLSA's provisions, as opposed to an independent contractor, who is not covered by the FLSA, is determined by the economic realities test. *Hopkins,* 545 F.3d at 343. The purpose of the economic realities test is to determine whether "the worker is economically dependent upon the alleged employer or is instead in business for himself." *Id.*

72.     District Courts within the Fifth Circuit consider the following five factors in assessing the economic reality of the working relationship: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id.* at 343 (*citing Herman v. Express Sixty-Minutes Delivery Serv., Inc.,* 161 F.3d 299, 303 (5th Cir. 1998). The Fifth Circuit further noted that: "[n]o single factor is determinative. Rather, each factor is a tool used to gauge the *economic dependence* of the alleged employee, and each must be applied with this ultimate concept in mind." *Id*. (*citing Herman*, 161 F.3d at 303 and *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1043-44 (5th Cir. 1987)).

73.     The FLSA recognizes that individual owners or managers can be "employers" who are jointly and severally liable, along with the corporate employers, for the FLSA damages

owed employees. *Martin v. Spring Break '83*, 688 F.3d 247, 251 (5th Cir. 2012) and *Gray v. Powers*, 673 F.3d 352, 354-57 (5th Cir. 2012). "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Martin*, 688 F.3d at 251.

74.     The FLSA recognizes the doctrine of joint employers. "Where an employee performs work that simultaneously benefits more than one employer, the concept of 'joint employment' imposes individual and joint FLSA liability on all employers." *Parker v. ABC Debt Relief, Ltd. Co.*, Civil Action No. 3:10-cv-1332-P, 2013 U.S. Dist. LEXIS 12859, at *13 - 20 (N.D. Tex. Jan. 28, 2013) (Solis, J.) (citing *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669-70 (5th Cir. 1968).

75.     "[I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so." 29 C.F.R. § 785.13; *accord Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (same).

76.     Federal law requires employers to make and keep accurate and detailed payroll data for non-exempt employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. Amongst other things, the regulations require employers to make and keep payroll records showing data such as the employee's name, social security number, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime pay is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period and date of payment and pay period covered by the payment, and records of remedial payments. 29 C.F.R. §

516.2(a)&(b). Employers are required to maintain the foregoing data for a minimum of three years. 29 C.F.R. § 516.5.

77.    The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee … ." 29 U.S.C. § 207(e).

78.    With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007); *see also Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 927 (E.D. La. 2009).

## V.    PLAINTIFF'S FLSA CLAIMS

79.    Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

80.    This action is authorized and instituted pursuant to the FLSA. 29 U.S.C. §§ 201, *et seq.*

81.    All conditions precedent to this suit, if any, have been fulfilled.

82.    At all material times, Plaintiff was an employee and/or joint employee of Preferred Imaging, Toggle and/or Baird pursuant to the FLSA. 29 U.S.C. § 203(e); *Wirtz*, 405 F.2d at 669-70; *Martin*, 688 F.3d at 251. Although Defendants labeled Plaintiff as a so-called independent contractor, the economic reality is that Plaintiff was an employee of Preferred Imaging, Toggle and/or Baird pursuant to the FLSA. Additionally, Preferred Imaging, Toggle and/or Baird were joint employers of Plaintiff.

83.    At all material times, Preferred Imaging has been an eligible and covered employer pursuant to the FLSA. 29 U.S.C. § 203(d).

84.    At all material times, Toggle has been an eligible and covered employer pursuant to the FLSA. 29 U.S.C. § 203(d).

85.    At all material times, Baird has been an eligible and covered employer pursuant to the FLSA. 29 U.S.C. § 203(d); *Martin*, 688 F.3d at 251.

86.    Plaintiff routinely worked in excess of 40 hours per seven-day workweek for Defendants during the time period relevant to her claims in this lawsuit.

87.    At all material times, Plaintiff was entitled to overtime compensation from Defendants at one and one-half times her regular rate of pay. 29 U.S.C. § 207(a)(1).

88.    Defendants failed to pay Plaintiff overtime compensation at one and one-half times her regular rate of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to her individual claims this lawsuit.

89.    Defendants did not maintain an accurate number of the daily and weekly hours worked by Plaintiff during the relevant time period of her individual claims in this lawsuit. 29 C.F.R. § 516.2(a).

90.    Defendants' violations of the FLSA are and were willful within the meaning of 29 U.S.C. § 255(a). *See Singer v. City of Waco*, 324 F.3d 813, 821-22 (5th Cir. 2003) (upholding a jury finding of willfulness). Plaintiff specifically pleads recovery for the time period of three years preceding the date this lawsuit was filed and forward for her individual and collective action FLSA claims.

91.    Plaintiff seeks all damages available for Defendants' violations of the FLSA.

## VI.    FLSA COLLECTIVE ACTION ALLEGATIONS

92.    Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

93.    The FLSA putative collective action members are all misclassified independent contractors similarly situated to Plaintiff who, in the relevant time period: (a) worked as medical

record transcriptionists for Preferred Imaging and/or Baird, but were issued paychecks and 1099s from Toggle; (b) worked more than 40 hours in any workweek in the relevant time period to the claims in this lawsuit; and (c) were not paid time and one-half their respective regular rates of pay for all hours worked over 40 in each such workweek by Preferred Imaging, Toggle, and/or Baird.

94.     All of the FLSA putative collective action members are similarly situated to Plaintiff, and to one another, within the meaning of Section 216(b) of the FLSA.

95.     Preferred Imaging, Toggle and/or Baird are/were employers and/or joint employers of the putative collective action members.

96.     Defendants employed numerous medical transcriptionists in many counties throughout Texas, and on information and belief, locations outside of Texas, who, like Plaintiff, were labeled and paid as so-called independent contractors, worked more than 40 hours in a workweek, and were deprived of FLSA mandated overtime premium compensation. Defendants' FLSA violations as to the putative collective action members were made on a companywide basis.

97.     Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis. *See Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (certifying nationwide collective action in FLSA case); *see also*, *Jones v. SuperMedia Inc.,* 281 F.R.D. 282, 290 (N.D. Tex. 2012) (same).

98.     All of the putative collective action members are similarly situated to Plaintiff, and to one another, within the meaning of Section 216(b) of the FLSA.

99.     Plaintiff reserves the right to establish sub-classes and/or modify class notice language as appropriate in any amended complaint and/or collective action certification motion or other proceeding.

100.    Plaintiff further reserves the right to amend the definition of the putative class, or sub classes therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## VII.   JURY DEMAND

101.    Plaintiff demands a jury trial.

## VIII.   DAMAGES AND PRAYER

102.    Plaintiff asks that the Court issue a summons for Defendants to appear and answer, and that Plaintiff and all opt-in Plaintiffs in this FLSA collective action lawsuit be awarded a judgment against Preferred Imaging, Toggle, and/or Baird for the following:

      a.      Actual damages in the amount of unpaid overtime wages;

      b.      Liquidated damages;

      c.      Certification of Plaintiff's FLSA causes of action as a collective action with the requirement of notice of this lawsuit being provided to the putative collective action members;

      d.      Costs;

      e.      Reasonable attorney's/attorneys' fees;

      f.      Post-judgment interest; and

      g.      All other relief to which Plaintiff, the putative collective action plaintiffs and the opt-in plaintiffs are entitled.

DATE: January 16, 2016.

Respectfully submitted,


By: s/ Allen R. Vaught    
   Allen R. Vaught
   TX Bar No. 24004966
   MS Bar No. 101695
   avaught@baronbudd.com
   Baron & Budd, P.C.
   3102 Oak Lawn Avenue, Suite 1100
   Dallas, Texas  75219
   (214) 521-3605 – Telephone
   (214) 520-1181 – Facsimile

   ATTORNEYS FOR PLAINTIFF